PEDRO A. MORELL, demandante y recurrido, *v.* SECRETARIO DE AGRICULTURA, ETC., demandados y recurrentes.

Número: R-70-281          Resuelto: 29 de mayo de 1973

---

[16] Hay otra cuestión resuelta por dicho tribunal que no está envuelta en este recurso.

478

*Gilberto Gierbolini, Procurador General* y *Peter Ortiz, Procurador General Auxiliar,* abogados de los recurrentes; *Pedro Morell Corrada,* abogado del recurrido.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

El demandante-recurrido es, o era a la fecha de los hechos, dueño de una finca de café sita en Utuado. Previa solicitud al efecto, en 11 de junio de 1965 aseguró contra huracán con el Seguro del Café del Departamento de Agricultura de Puerto Rico la cosecha de 360 cuerdas de dicho fruto, la cual se estimó en unos 800 quintales. La póliza cubría el período comprendido entre el 11 de junio de 1965 y el 30 de abril de 1966. El valor asegurado ascendió a $40,000.00, equivalentes a 800 quintales a razón de $50.00 quintal. La póliza no cubría pérdidas que no excediesen del 10 por ciento de la cosecha asegurada y sólo cubría el exceso de dicho 10 por ciento.

En la noche del 9 al 10 de diciembre de 1965 fuertes vientos soplaron en aquella región y causaron que parte de los granos de café se desprendiera de los arbustos. El demandante reclamó el pago de la pérdida al Seguro del Café.

Conforme el inciso 14 de las Condiciones Generales de la póliza, si surgiese disputa entre el asegurado y el asegurador en cuanto al monto de las pérdidas, la cuestión sería sometida a la decisión de dos árbitros, nombrados uno por cada parte. También dispone el inciso 14 que antes de comenzar el arbi-

traje de la controversia los dos árbitros antes mencionados deberán nombrar un tercer árbitro. Este decidiría los puntos en discrepancia en los cuales los otros dos árbitros no estuvieren de acuerdo.

Hubo discrepancia entre el asegurado y el Seguro del Café en cuanto al monto de las pérdidas y se nombraron los árbitros el Sr. Abdón A. Pérez en representación del Seguro del Café, el Sr. Jorge Frau en representación del asegurado y el Hon. Rubén Hernández Rosario, entonces Juez de Distrito y hoy Juez Superior, como el tercer árbitro. El 20 de abril de 1966 los árbitros visitaron la finca del demandante para ver sobre el terreno los daños ocurridos. Les acompañó durante la mañana de ese día el demandante, su hijo y el mayordomo de la finca. Por la tarde les acompañó el hijo del demandante y el mayordomo. Las determinaciones de hecho de los árbitros son las siguientes:

"De la inspección ocular de la destrucción supuestamente causada por los vientos del 9 de diciembre de 1965 se encontraron probados los siguientes hechos:

1. Efectivamente ocurrieron vientos de alguna intensidad el día 9 de diciembre de 1965.

2. Que en la finca del Sr. Pedro Morell se perdió, por no poderse recoger, una cantidad de café, que podría calificarse como sobre lo normal. (Nunca es posible recoger todo el café que produce una finca, aun cuando las condiciones climatológicas sean perfectas.)

3. Pudimos observar algunos árboles de guava (serían 3 ó 4) desganchados. Supusimos sería debido o al viento o a la hormiguilla.

4. Observamos algunas plantas de guineos y plátanos parcialmente averiadas. Había muchas en pie.

5. No pudimos observar arbustos de café flojos en su tronco como hubiese sido el caso de ser sacudidos violentamente por los vientos.

6. Los árbitros tomamos conocimiento de que para el mes de diciembre la mayor parte del café producido en Puerto Rico ha sido recogido de los arbustos.

7. Las pequeñas plantas de café que pudimos observar tenían diferente tamaño pudiéndose deducir que los granos se habían desprendido en distintas ocasiones.

8. El Sr. Pedro Morell tiene sembradas según su propio testimonio más de 300 cuerdas de café. Los árbitros tomamos conocimiento del hecho de que es muy difícil de encontrar suficiente cogedores en la zona de Utuado para cubrir una extensión tan grande de terreno de tipo inclinado."

Los árbitros formularon las siguientes conclusiones:

"Las pérdidas habidas en la plantación de café del Sr. Pedro Morell *no* se debieron a los vientos de alguna intensidad habidos en diciembre 9 de 1965.

Aun asumiendo que algún cafe se desprendiera de sus ramas como resultado de las ráfagas, estimamos que esa cantidad no pasó del 10% deducible que autoriza la póliza. La edad estimada de las pequeñas plantas observadas varió grandemente y definitivamente no podría decirse que los granos de los cuales germinaron se desprendieron todos, o la gran mayoría de ellos el 9 de diciembre de 1965. Cualquier otra conclusión *no* estaría sostenida por la prueba observada y oída ya que tanto el asegurado como el asegurador presentaron peritos de diversas clases para probar sus puntos de vista.

Creemos que el Sr. Pedro Morell no tiene derecho a recibir compensación del Seguro del Café de P.R., por supuestas pérdidas ocurridas a su cosecha el día 9 de diciembre de 1965."

Luego de dichas conclusiones aparece un escolio al pie de la página en la cual se hace constar que el Sr. Jorge Frau, representante del asegurado, "concurre con la opinión arriba emitida" pero que creyó sin embargo que debía concederse "alguna compensación" al Sr. Morell por las pérdidas sufridas. En este punto, expresa dicho escolio, no estuvieron de acuerdo los otros dos árbitros. En la última página de su Informe expresan los árbitros que el Sr. Pedro Morell solicitó una reconsideración del laudo; que los tres árbitros volvieron a reunirse el 12 de agosto de 1966 en Utuado; que discutieron nuevamente la decisión y que llegaron a la conclusión "esta vez por unanimidad que las pérdidas sufridas en la

cosecha de café del Sr. Morell, como resultado de las ráfagas del 9 de diciembre de 1965, no ascendieron al 10% de su cosecha estimada para ese año."

No conforme con el laudo de los árbitros, el demandante presentó una demanda en el Tribunal Superior contra el Secretario de Agricultura en cobro de la póliza. Luego de visto el caso el tribunal declaró con lugar la demanda y condenó al Seguro del Café a pagarle $11,000.00 al demandante. Para llegar a esa cifra hizo la siguiente operación: Concluyó que como resultado de las ventiscas el demandante perdió 300 quintales de café. Estos a razón de $50.00 quintal suman $15,000. Le dedujo $4,000.00 (el 10 por ciento de $40,000.00 que es el total asegurado) y quedó un balance de $11,000.00.

El Secretario de Agricultura de Puerto Rico, aquí demandado-recurrente, señala cuatro errores. Plantea en los primeros dos que el Tribunal Superior no tenía jurisdicción para entender en este caso porque el reglamento vigente a la fecha de los hechos y las Condiciones Generales de la póliza disponían que la decisión de la mayoría de los árbitros debería ser acatada como final, ejecutable e inapelable por ambas partes. En el tercer apuntamiento expresa que el tribunal erró al anular el laudo de arbitraje sin base legal para ello. En el cuarto señalamiento expresa que el tribunal erró al sustituir su criterio en lugar del de los árbitros. Se hace necesario examinar la ley y el reglamento aplicables y los términos pertinentes de la póliza.

La póliza en cuestión fue expedida bajo los términos de la Ley Núm. 278 de 5 de abril de 1946 (5 L.P.R.A. sec. 290 y ss.). Esta ley derogó la anterior Ley Núm. 281 de 15 de mayo de 1945, la cual creó originalmente la corporación pública conocida como Corporación de Seguro del Café de Puerto Rico. La Ley Núm. 278 de 1946 estableció el seguro del café contra huracanes y para realizar sus propósitos creó la Corporación de Seguro del Café de Puerto Rico, adscrita al Departamento de Agricultura. Su propósito era proveer un

seguro contra huracanes para los agricultores de café de Puerto Rico.

Cuando se llevó a efecto la reorganización de la Rama Ejecutiva del Gobierno de Puerto Rico en el año 1950 con el propósito de mejorar la organización y procedimientos del Gobierno, se suprimió, mediante el Plan de Reorganización Núm. 1 de aquel año, la Corporación de Seguro del Café y sus funciones se transfirieron al Departamento de Agricultura. Por eso el demandado en el caso de autos es el Secretario de Agricultura. El propósito de aquel plan de reorganización, según se desprende del propio Mensaje del Gobernador de Puerto Rico al trasmitir dicho plan a la Asamblea Legislativa, fue el de reunir en dicho Departamento los organismos de la Rama Ejecutiva dedicados a funciones agrícolas, aboliendo varios organismos con funciones germanas relacionadas con la agricultura y que operaban prácticamente en forma autónoma. Se creyó conveniente proveer y depositar en el Comisionado (ahora Secretario) de Agricultura una dirección central de esos asuntos. [1]

En la actualidad la ley vigente sobre la materia es la Ley Núm. 12 de 12 de diciembre de 1966 titulada Ley de Seguros Agrícolas de Puerto Rico, 5 L.P.R.A. sec. 1401 y ss., la cual derogó la Ley Núm. 278 de 1946 y creó en el Departa-

---

[1] Sobre la reorganización de la Rama Ejecutiva del Gobierno de P.R. véase: Mensaje del Gobernador de Puerto Rico Trasmitiendo a la Asamblea Legislativa Los Planes de Reorganización de la Rama Ejecutiva, en *Leyes*, Sesión Ordinaria de 1950, Apéndice del Tomo, pags. iii y ss.; Wells, *The Modernization of Puerto Rico*, Harvard Univ. Press (1969) pág. 198; Wells, *La Modernización de Puerto Rico*, Editorial U.P.R. (1972) pág. 204; Comisión de Reorganizacion, *Informe Sobre la Reorganización de la Rama Ejecutiva del Gobierno de Puerto Rico* (1949); Commission for Reorganization, *Report on the Reorganization of the Executive Branch of the Government of Puerto Rico* (1949); Wells, *"Administrative Reorganization in Puerto Rico,"* 9 The Western Political Quarterly 470 (1956); Dimock, Muñoz Amato y otros, *La Reorganización de la Rama Ejecutiva,* publicación conjunta de la Escuela de Administración Pública de la Universidad de Puerto Rico y del Capítulo de Puerto Rico de la Sociedad Americana de Administración Pública (1951); Clapp, *"Management Improvement in Puerto Rico,"* 12 Public Administration Review 27 (1952).

mento de Agricultura una oficina denominada Seguros Agrícolas de Puerto Rico. Esta ley no limita los seguros al café, sino que cubre otras cosechas.

El caso de autos se rige por la ley y el Reglamento vigentes a la fecha de los hechos. Son éstos la citada Ley Núm. 278 de 1946 según enmendada a dicha fecha (5 L.P.R.A. secs. 290 y ss.) y el Reglamento aprobado por el Secretario de Agricultura en 12 de febrero de 1962 (5 R.&R.P.R. secs. 294–84 y ss.). Con motivo de la nueva Ley de Seguros Agrícolas de Puerto Rico, la Núm. 12 de 12 diciembre 1966 (5 L.P.R.A. secs. 1401 y ss.) rige ahora un nuevo Reglamento Sobre Seguro de Cosechas de Café Contra el Riesgo de Huracán, 5 R.&R.P.R. secs. 1403–101 y ss.

La póliza, en el último párrafo del inciso 14 de sus Condiciones Generales, dispone lo mismo que el Reglamento del Seguro de Cosechas de Café aplicable (el de 12 de febrero de 1962). Dicen al efecto el Reglamento y la póliza:

"La decisión de una mayoría de los tres árbitros deberá ser acatada como final, ejecutable e inapelable por ambas partes. La determinación de las pérdidas o daños por medio de arbitraje en la forma antedicha es una condición previa indispensable, y sin llevarse a efecto dicho arbitraje, el asegurado estará impedido de incoar reclamación judicial alguna de pérdidas o daños con motivo de la póliza."—5 R.&R.P.R. sec. 294–101 (d).

Como puede verse, ese párrafo no tiene mucho sentido. Por un lado dice que la decisión de los árbitros será final, ejecutable e inapelable y por otro lado dice que la determinación de las pérdidas por medio de arbitraje es una condición previa para que el asegurado pueda incoar reclamación judicial alguna de pérdidas o daños con motivo de la póliza. Pero éste no es el único escollo que encontramos en contra de la posición del demandado, pues aunque el párrafo antes citado dijese clara y únicamente que la decisión de los árbitros es final e inapelable tendríamos que considerar, como tenemos que

hacerlo ahora, la propia letra de la ley bajo cuya autoridad se promulga el reglamento y se expide la póliza.

La Ley Núm. 278 de 1946 que, como dijimos, es la aplicable, creaba la Corporación de Seguro del Café y expresamente la facultaba para demandar y ser demandada. No hemos encontrado en dicha ley ninguna disposición que hiciese el arbitraje compulsorio ni final. Es en el Reglamento para el Seguro de Cosechas de Café aprobado por el Secretario de Agricultura en 3 de abril de 1957 que aparece una disposición sobre arbitraje compulsorio pero como condición previa para entablar reclamación judicial. 5 R.&R.P.R. sec. 294–58. Tampoco hemos encontrado en dicho reglamento de 1957 disposición alguna que declare el arbitraje final e inapelable. Eso se declara en el reglamento del año 1962. La Ley Núm. 278 de 1946 sufrió varias alteraciones importantes mediante la Ley Núm. 67 de 10 de junio de 1953. Para apreciar la intención legislativa sobre este asunto es conveniente ver el propio título de dicha Ley Núm. 67. Dice el mismo:

"Ley para autorizar y determinar las condiciones en que el Secretario de Agricultura y Comercio llevará a cabo el Programa de Seguro del Café a tenor de la Ley Núm. 278 de 5 de abril de 1946 y el Artículo 2 del Plan de Reorganización Núm. 1 de 1950; renunciar a la inmunidad del Estado y fijar su responsabilidad en cuanto a reclamaciones resultantes de dicho seguro; y para convalidar los actos, determinaciones y transacciones llevadas a cabo por el Secretario de Agricultura y Comercio con relación al Seguro del Café en virtud del Plan de Reorganización Núm. 1 de 1950."

■ El artículo clave en el caso de autos, y el cual hace inoperantes las disposiciones de la póliza aquí en cuestión y del reglamento de 1962 en el sentido de que la decisión de los árbitros es final e inapelable, es el Art. 7 de dicha Ley Núm. 67 de 10 de junio de 1953, el cual leía como sigue:

"El Secretario de Agricultura y Comercio podrá demandar y ser demandado a nombre y en representación del Estado Libre Asociado de Puerto Rico por cualesquiera reclamación de buena

fe que surja con relación al negocio de seguro o reaseguro del café autorizado por esta Ley, *a tal fin renunciando el Estado a su inmunidad y reconociendo cualesquiera obligación que fuere debidamente establecida y fijada por los tribunales de justicia luego de agotado previamente el procedimiento administrativo* correspondiente para liquidar la reclamación; Disponiéndose que cuando ambas partes aceptaren la obligación y sólo hubiere conflicto en cuanto a alguna diferencia, la acción en los tribunales se dará sólo con relación a la diferencia; Disponiéndose además, que en estas reclamaciones se seguirá el procedimiento de las acciones civiles ordinarias, sin sujeción a las disposiciones de la Ley Núm. 76 de 13 de abril de 1916 según enmendada, y las sentencias que puedan recaer contra el Estado Libre Asociado de Puerto Rico, una vez firmes se pagarán con cargo al 'Fondo de Seguro del Café' creado por la Ley Núm. 278 de 5 de abril de 1946." (Énfasis nuestro.)

Parece claro que dicho artículo autorizaba las demandas al Estado, luego de agotar el procedimiento administrativo. Disponía, además, que en esas reclamaciones se seguiría el procedimiento de las acciones civiles ordinarias, sin sujeción a la Ley Para Autorizar Demandas Contra el Pueblo de Puerto Rico entonces vigente, la Ley Núm. 76 de 13 de abril de 1916. (Como se sabe, la nueva ley sobre demandas contra el Gobierno es la Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. sec. 3077 y ss.) En el mismo sentido—permitir que los asegurados pudiesen recurrir a los tribunales—son las expresiones hechas en el Informe de la Comisión de Agricultura de la Cámara de Representantes sobre el P. de la C. 1067 (que se convirtió en la Ley Núm. 67 antes mencionada), el cual aparece en el *Diario de Sesiones*, Asamblea Legislativa, Sesión Ordinaria 1953, Vol. 2, Tomo 2, pág. 1509 y en el Informe de la Comisión de Agricultura del Senado sobre el mismo proyecto, el cual aparece en el *Diario de Sesiones*, Asamblea Legislativa, Vol. 2, Tomo 3, pág. 2056, las cuales no reproducimos aquí por no ser en exceso prolijos. Al referirnos al Art. 7 de la Ley Núm. 67 de 1953 antes citado, los hemos hecho en el pasado porque dicha Ley Núm. 67 fue derogada

por la vigente Ley de Seguros Agrícolas de Puerto Rico de 1966 antes mencionada.

■ En cuanto a los segundos dos señalamientos—que erró el Tribunal al anular el laudo de los árbitros y al sustituir su criterio por el de ellos—concluimos que se cometieron. Todo indica que los árbitros designados son personas muy cualificadas para hacer la inspección que se les encomendó. Son ellos presuntos conocedores prácticos del cultivo del café y de las condiciones climatológicas y físicas de la región concernida. Están en mucha mejor posición para hacer conclusiones de hecho sobre la materia que los tribunales. Sus conclusiones finales están sostenidas por sus conclusiones de hecho. La evidencia practicada en el juicio consistente de las declaraciones del demandante, del Sr. Arguelles, del Sr. Vargas (quién no vio la finca después de los vientos), del Sr. Menéndez Ramos (quien tampoco visitó la finca, sino que opinó a base de fotografías) y de los Sres. Pérez Ramos, Albino y Hernández, según resumidas en la sentencia del tribunal de instancia, no es suficiente para rebatir con éxito en esas circunstancias las conclusiones de los árbitros antes citadas.

En vista de lo anterior *se revocará la sentencia recurrida y se declarará sin lugar la demanda en este caso.*